UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY S. FREEMAN<br><br>    Defendant. | Criminal No. 22-20346<br><br>HON. PAUL D. BORMAN<br><br>**MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 1 (TAX EVASION)** |

Defendant Jeffrey S. Freeman requests a judgment of acquittal on Count 1 of the Second Superseding Indictment under Rule 29 of the Federal Rules of Criminal Procedure.

*Certification*.  Before filing this motion, counsel conferred as required under Local Criminal Rule 12.1(a). The defense explained that nature of the motion and its legal basis to the Government, which declined to concur in the relief sought.

Dated:  17 October 2022

Respectfully submitted,

BUTZEL LONG, P.C.

/s/ *George B. Donnini*

George B. Donnini (P66793)
Joseph E. Richotte (P70902)
Columbia Center
201 W. Big Beaver Rd. #1200
Troy, MI 48084
(248) 258-1616
donnini@butzel.com
richotte@butzel.com

MARCUS NEIMAN
RASHBAUM & PINEIRO, LLP
Jeffrey A. Neiman
Derick Vollrath
Brandon S. Floch
100 S.E. Third Ave. #805
Fort Lauderdale, FL 33394
(954) 462-1200
jneiman@mnrlawfirm.com
dvollrath@mnrlawfirm.com
bfloch@mnrlawfirm.com
*Counsel for Defendant*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>JEFFREY S. FREEMAN<br><br>　　Defendant. | Criminal No. 22-20346<br><br>HON. PAUL D. BORMAN<br><br>**MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 1** |

**DEFENDANT'S BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... 1

INDEX OF AUTHORITIES ..................................................................... 2

ISSUE PRESENTED ................................................................................ 3

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............... 4

INTRODUCTION ..................................................................................... 5

STANDARD OF DECISION ................................................................... 6

BACKGROUND ...................................................................................... 6

ARGUMENT ............................................................................................ 7

CONCLUSION ...................................................................................... 12

## INDEX OF AUTHORITIES

*Cases*

*Boulware v. United States*,
    552 U.S. 421 (2008) ............................................................................... 8

*Commissioner v. First Sec. Bank of Utah, N.A.*,
    405 U.S. 394 (1972) ............................................................................... 8

*Ford Dealers Advert. Fund, Inc. v. Commissioner*,
    55. T.C. 761 (1971) ................................................................................ 9

*Fuller v. Anderson*,
    662 F.2d 420 (6th Cir. 2010) ................................................................. 6

*Hesser v. United States*,
    40 F.4th 1221 (11th Cir. 2022) ....................................................... 11, 12

*Hobson v. Commissioner*,
    63 T.C.M. 3085; 1992 WL 116027 (1992) ............................. 8, 10, 11, 13

*Miele v. Commissioner*,
    72 T.C. 284 (1979) ................................................................................ 9

*United States v. Curtis*,
    782 F.2d 593 (6th Cir. 1986 .................................................................. 8

*United States v. Moreland*,
    665 F.3d 137 (5th Cir. 2011) ................................................................. 6

*United States v. Samuels*,
    308 F.3d 662 (6th Cir. 2002) ................................................................. 6

*United States v. Toushin*,
    899 F.2d 617 (7th Cir. 1990) ................................................................. 9

*Wynn v. Commissioner*,
    70 T.C.M. 1646; 1995 WL 760529 (1995) .......................................... 9, 10

## ISSUE PRESENTED

The Government has charged Defendant Freeman under 26 U.S.C. § 7201 of attempting to evade the imposition of a tax. To prevail on their charge, the Government must prove that Defendant willfully failed to declare income that should have properly been included on his tax return. An individual receives income when he gains complete dominion or control over property, thereby realizing ***a personal benefit*** from the funds.

Here, in 2013, and after telling his bank, Charter One, that all money in client trust account #7 belonged to Vann, Freeman wired $6.5 million from Charter One to a Swiss bank. The wire confirmations stated FBO (*i.e.* for the benefit of) A. Vann. At trial, the Government presented no evidence about the beneficial ownership of the Swiss account nor any evidence showing that Freeman received the $6.5 million, used, or benefited from this money.

Without any evidence suggesting Freeman personally benefitted from the funds, should the Court dismiss Count I before sending it to the jury?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Hesser v. United States*, 40 F. 4th 1221 (11th Cir. 2022);

*Wynn v. Commissioner*, 70 T.C.M. 1646 (1995);

*Hobson v. Commissioner*, 63 T.C.M. 3085 (1992).

- 4 -

## INTRODUCTION

The Government charges Freeman with tax evasion related to his 2013 Tax Return, for allegedly failing to report $6.5 million that he embezzled from the Government's Complaining Witness, Ashley Vann. Notably, the Government has not charged Defendant Freeman with the underlying embezzlement. They couldn't. By the time Vann came forward with her claim, the Statute of Limitations had expired.[1]

Instead, the Government has sought to force a square peg into a round hole, by charging Defendant Freeman with tax evasion relating to his 2013 Tax Return. Based on the evidence of a single witness, the Government argues that Freeman transferred $6.5 million out of his trust account belonging to Ashley Vann into a Swiss Bank account, without her instructions to do so. But, at trial, the Government failed to present any evidence that Freeman received that money. Freeman told his bank that the $6.5 million belonged to Vann. He wired $6.5 million to an account in Switzerland expressly writing on the wire transfer that it was for the benefit of Vann. And the government has not presented any evidence showing that Freeman controlled the Swiss account, spent the $6.5 million, or that his net worth increased after the alleged theft.

---

[1] Embezzlement against a private individual is ordinarily charged as wire fraud, and the embezzlement here allegedly occurred no later than October 1, 2013. The statute of limitations for wire fraud is five years. 18 U.S.C. 3282. Freeman was not indicted until July 7, 2022. [DE 1]

- 5 -

## STANDARD OF DECISION

Under Rule 29, a court must dismiss a charge when the Government presents insufficient evidence to sustain a conviction. The Government fails to present sufficient evidence when, even after taking the evidence in the light most favorable to the Government, no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Samuels*, 308 F.3d 662, 667 (6th Cir. 2002). If the evidence gives "equal or nearly equal" support to a theory of guilt and a theory of innocence, charges must be dismissed, because, in that event, a reasonable trier of fact "must necessarily" entertain reasonable doubt. *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011). In other words, evidence which merely leads to "reasonable speculation" of guilt will be insufficient. *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 2010). No reasonable jury can convict a defendant where the Government has done nothing "more than pile inference upon inference" to prove guilt. *Moreland*, 665 F.3d, at 49.

## BACKGROUND

The Government claims, based on Vann's testimony alone, that at some point in 2013, Freeman told Ms. Vann that he had resolved her $10 million penalty and interest problem for $6.5 million, roughly the amount remaining in Freeman's Trust account for Ms. Vann. Defendant Freeman, on the other hand, argues that between 2013 and 2015, Vann—who did not want her lawyer to be holding onto this money but who also knew that the IRS and FBI were on to her worldwide assets in companies she controlled (including Panamanian entities Lucavela and

Buena Fortuna)—directed Freeman to send $6.5 million to Switzerland into a bank account in the name of Rozet Assets.

Though the parties vehemently disagree on who directed these transfers to Rozet Assets, what is undisputed is that $6.5 million was sent to this Swiss bank account in 2013 with a notation that said FBO A. Vann (*i.e.* for the benefit of A. Vann.). GX 42-43. What is also undisputed is that Government failed to introduce evidence showing Freeman benefitted from the $6.5 million. The Government failed to introduce evidence about ownership of the Swiss account. The Government failed to prove that Freeman received the $6.5 million from Switzerland. And the Government failed to show any increased spending by Freeman after he allegedly procured the funds.

## ARGUMENT

The Court should dismiss Count 1 because, even viewing the evidence in the light most favorable to the Government, no reasonable jury could find that Freeman had undeclared taxable income. To prevail on its charge of Tax Evasion, the Government must prove these elements beyond a reasonable doubt: "[1] willfulness, [2] the existence of a tax deficiency, and [3] an affirmative act constituting an evasion or attempted evasion of the tax." *Boulware v. United States*, 552 U.S. 421, 424 n.2 (2008). While Freeman contends that the Government's entire case is false, his Rule 29 Motion concerns the *second* of these elements. Accordingly that element will be further elaborated upon here.

A tax deficiency exists when a defendant possesses undeclared income. *Hobson v. Commissioner*, 63 T.C.M. 3085; 1992 WL 116027 (1992). Money

becomes income to a taxpayer when the taxpayer "gains complete dominion and control over [it], thereby realizing an economic benefit … It is the command over property and the enjoyment of its economic benefit which are recognized as a proper basis for taxation." *United States v. Curtis*, 782 F.2d 593, 596 (6th Cir. 1986). A taxpayer only has taxable income when he "actually receive[s] funds." *Commissioner v. First Sec. Bank of Utah, N.A.*, 405 U.S. 394, 405 (1972).

A taxpayer does not enjoy the funds when he does not "personally benefit" from the money. *Hobson*, *supra*. And whether the taxpayer actually spends the funds is "highly relevant to and probative of the determination of whether the taxpayer had the absolute control necessary for the funds to constitute income." *United States v. Toushin*, 899 F.2d 617, 623 (7th Cir. 1990).

Consistent with these principles, "a taxpayer does not recognize as income funds the taxpayer holds in trust for the benefit of another. *Ford Dealers Advert. Fund, Inc. v. Commissioner*, 55. T.C. 761, 771 (1971), *aff'd* 456 F.2d 255 (5th Cir. 1972). Thus, when a lawyer holds funds for the benefit of his clients in a trust account, those funds are not income to the lawyer. See *Miele v. Commissioner*, 72 T.C. 284, 290 (1979). Similarly, a taxpayer does not recognize income on funds sent from a trust account to the beneficiary or a third party.

The Government fails to prove a tax evasion charge when it cannot show that a taxpayer "received any of the funds at issue and used them for personal purposes." *Wynn v. Commissioner*, 70 T.C.M. 1646; 1995 WL 760529, at *8 (1995). *Wynn* is instructive. In that case, the taxpayer, the president of a jew-

- 8 -

elry manufacturer, pled guilty to criminal tax evasion under Section 7201 for certain transactions. *Id.*, at *2. Yet, before the Tax Court, the taxpayer contested whether he had undeclared, taxable income related two other transactions. *Id.*, at *6. Applying universal principles of income recognition, the Tax Court held for the Taxpayer and determined that the transactions did not constitute his taxable income.

Specifically, the Tax Court rejected the IRS's argument that the taxpayer unlawfully diverted corporate funds to buy jewelry for his personal use. The IRS argued that the jewelry provided the taxpayer an economic benefit sufficient to give rise to taxable income. *Id.* But the Tax Court found that the IRS failed to carry its heavy burden that these jewelry purchases inured to the taxpayer's benefit. The Court concluded, "Although we suspect that [the taxpayer] may have acquired control of these items and appropriated them to his own use, our suspicion, without more, is no substitute for clear and convincing evidence." *Id.*, at *6. Further, "[The IRS] offered no proof that the jewelry items gave petitioner any economic benefit … [and] offered no testimony that [the taxpayer] later sold these items or even that he or his wife ever received or possessed any of these items." *Id.*

Further, the Tax Court in *Wynn* rejected the IRS's assertion that the taxpayer unlawfully diverted funds to a nominee bank account in the name "Ron Gelfman," and that the diverted funds were income to the taxpayer. *Id.*, at *7. Even though the IRS called the deposits into the account suspicious and even though the taxpayer had some link to the account because his name appeared on the bottom of checks associated with the account, the Tax Court held that

- 9 -

the IRS failed to introduce evidence that the taxpayer controlled the funds: "[The IRS] has not proven that [the taxpayer] was more than a mere conduit for someone else or that he ever received any of the funds at issue and used them for personal purposes." *Id.*

Finally, courts have emphasized that mere embezzlement is not sufficient to establish income for tax evasion purposes. These are distinct charges with distinct elements. *Hobson*, *supra*. Crucial to this Motion, not "all misappropriated funds are gross income of the person who illegally misapplied the funds." *Id.* Whether the misappropriated funds are taxable to the person who misapplied the funds turns on whether that person "receive[d] a sufficiently cognizable benefit under the normal principles of income taxation." *Id.* For example, in *Hobson*, the taxpayer—a bank employee—pled guilty to an embezzlement charge for misapplying bank funds. *Id.* Before the Tax Court, he argued that because he used his position of authority to provide unapproved and undocumented overdraft protection to a bank customer, rather than to divert funds to himself, he did not benefit from this misappropriation. *Id.* The Tax Court agreed, holding that "those funds misappropriated and advanced to [the bank customer's] accounts … are not includable in the [taxpayer's] gross income … [because] the [taxpayer] did not personally benefit from these advances." *Id.*

In short, the above cases teach that the Government must do more than raise mere suspicion that a defendant gained control over income for that income to be taxable and lead to a tax deficiency under the tax evasion statute. Rather, it must prove, beyond a reasonable doubt, that the defendant exercised complete dominion and control over the disputed money or property.

Finally, the Eleventh Circuit's very recent decision in *Hesser v. United States*, 40 F.4th 1221 (11th Cir. 2022), is instructive on what evidence is sufficient to support a finding of such complete dominion and control. In *Hesser*, the Court considered whether the Government had presented sufficient evidence to sustain a conviction for attempted tax evasion.[2] *Id.*, at 1225. The Government argued that the taxpayer evaded paying taxes by converting his assets to gold and hiding it in his home. *Id.*

Though the Government presented evidence that the taxpayer attended tax protestor meetings, that he hid gold from the IRS, and that he gave $50,000 to his wife from the sale of some gold, the court found the evidence insufficient for a reasonable juror to convict the taxpayer of attempted tax evasion. *Id.*, at 1226. Central to the court's conclusion was its finding that the Government never presented any evidence that the gold belonged to the taxpayer. Because the Government failed to show the gold belonged to the taxpayer, the taxpayer could not be found guilty of failing to pay taxes on property he did not derive an economic benefit from.

Just as the Government in *Wynn* and *Hesser* could not rely on mere suspicion that the disputed funds provided an economic benefit to the taxpayer, here, the Government cannot rely on mere speculation to claim that Freeman

---

[2] *Hesser* came before the Court in an unusual procedural posture. *Hesser* considered a district court's denial of a Rule 2255 motion for post-conviction relief, arguing that defense counsel was deficient for failing to move for Rule 29 relief on this issue. The Eleventh Circuit reversed, holding that counsel was deficient for failing to spot and raise the issue.

derived an economic benefit from the $6.5 million. And that is all the Government has presented in this case.

Indeed, the evidence at trial suggests the Defendant did not benefit from the funds. The funds sat in his client trust account, an account he did not derive income from. GX 42-43. The Defendant told Charter One that the $6.5 million belonged to Vann. DX 542. When the Defendant wired the funds, he made it clear the wires were for the benefit of Vann. GX 42-43. And, at trial, the Government failed to introduce sufficient evidence showing Freeman controlled or had any connection to the Swiss account, spent the $6.5 million, or otherwise touched those funds after they left Charter One.

At trial, the Government presented a single witness who claims she did not authorize the wire to Switzerland and no other fact witnesses. But, even viewing the evidence in the light most favorable to the Government and crediting the testimony of Vann, at most, the Government has shown that Freeman sent an unauthorized wire, not that he personally benefitted from $6.5 million. See *Hobson*, *supra* (whether the misappropriated funds are taxable to the person who misapplied the funds turns on whether that person "receive[d] a sufficiently cognizable benefit under the normal principles of income taxation."). Because the Government has failed to show that Freeman obtained a sufficiently cognizable benefit from the $6.5 million, the Government failed to prove a tax deficiency and Count I must be dismissed before this case is sent to the jurors.

## CONCLUSION

For these reasons, the Court should grant Defendant Freeman's Rule 29 Motion with respect to Count I.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BUTZEL LONG, P.C. |
| Dated:  19 October 2022 | /s/ *George B. Donnini* |
|  | George B. Donnini (P66793) |

Joseph E. Richotte (P70902)
Columbia Center
201 W. Big Beaver Rd. #1200
Troy, MI 48084
(248) 258-1616
donnini@butzel.com
richotte@butzel.com
MARCUS NEIMAN
RASHBAUM & PINEIRO LLP
Jeffrey A. Neiman
Brandon S. Floch
100 S.E. Third Ave. #805
Fort Lauderdale, FL 33394
(954) 462-1200
jneiman@mnrlawfirm.com
bfloch@mnrlawfirm.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2022, I filed the foregoing document with CM/ECF, which has caused service to be made on counsel of record.

<em>/s/ George Donnini</em>